1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TANYA L. TAGLE,                          )    Case No. CV 15-3929-SP
                    Plaintiff,           )
                                         )
           v.                            )    MEMORANDUM OPINION AND
                                         )    ORDER
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security   )
Administration,                          )
                                         )
                    Defendant.           )
                                         )
_____  )

**I.**

**INTRODUCTION**

On May 22, 2015, plaintiff Tanya Tagle filed a complaint against the

Commissioner of the Social Security Administration ("Commissioner"), seeking a

review of a denial of a period of disability, disability insurance benefits ("DIB"),

and supplemental security income ("SSI"). Both plaintiff and defendant have

consented to proceed for all purposes before the assigned Magistrate Judge

pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for

adjudication without oral argument.

1

1   Plaintiff presents one disputed issue for decision, whether the administrative
2   law judge ("ALJ") properly considered plaintiff's credibility.  Memorandum in
3   Support of Plaintiff's Complaint ("P. Mem.") at 4-15; Memorandum in Support of
4   Defendant's Answer ("D. Mem.") at 1-7.
5   Having carefully studied the parties' written submissions, the Administrative
6   Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed
7   herein, some of the reasons provided by the ALJ for discounting plaintiff's
8   credibility were clear and convincing.  Consequently, the court affirms the
9   decision of the Commissioner denying benefits.

10   **II.**

11   **FACTUAL AND PROCEDURAL BACKGROUND**

12   Plaintiff, who was thirty-eight years old on April 26, 2008, the beginning of
13   the period at issue, completed high school and has a certificate for medical
14   assisting.  AR at 53, 76, 678, 684, 806, 1056.  Plaintiff has past relevant work as a
15   retail sales clerk and a pharmacy clerk.  *Id.* at 98, 206, 1035, 1057.

16   On January 16, 2007, plaintiff, unrepresented, filed applications for DIB
17   and SSI, alleging an onset date of January 1, 2007.[1]  *Id.* at 108.  The Commissioner
18   denied plaintiff's applications, after which plaintiff filed a request for a hearing.
19   *See id.*  On April 25, 2008, ALJ Philip J. Simon denied plaintiff's claims.  *Id.* at
20   108-20.  Plaintiff did not pursue any legal remedies at that time (*see id.* at 25,
21   641), therefore the unfavorable decision of April 25, 2008 is final and binding, and
22   is not now subject to review by this court.  *See* 24 U.S.C. § 405(g)-(h).

23   On September 17, 2008, plaintiff filed new applications for a period of
24   disability, DIB, and SSI, alleging an onset date of June 22, 2007, due to scoliosis,

25

26

27   [1]   The Administrative Record does not contain plaintiff's January 16, 2007
28   applications, but based on the decision, it appears plaintiff alleged disability due to
     lower back pain, obesity, kidney stones, and ankle sprain.  AR at 112.

2

1  depression, anxiety, arthritis, degenerative disc disease, and fibromyalgia.  AR at

2  157-66, 205, 1056.  The Commissioner denied plaintiff's applications, after which

3  she filed a request for a hearing.  *Id.* at 121-31.

4       On December 10, 2009, plaintiff, represented by counsel, appeared and

5  testified at a hearing before ALJ Michael J. Kopicki.  *Id.* at 71-97.  A vocational

6  expert also testified.  *Id.* at 98-103.  On December 21, 2009, the ALJ denied

7  plaintiff's claims for benefits.[2]  *Id.* at 25-35.  Plaintiff filed a timely request for

8  review of the ALJ's decision, which was denied by the Appeals Council.  *Id.* at 7-

9  9, 17.  After considering additional information submitted by plaintiff, the Appeals

10  Council again denied plaintiff's request.  *Id.* at 1-3.

11       On September 9, 2011, plaintiff filed a complaint in this court against the

12  Commissioner.  *See* case no. CV-11-7093-SP.  On September 21, 2012 the court

13  found the ALJ improperly discounted plaintiff's credibility and remanded the case

14  to the Commission for further administrative proceedings.  AR at 750-761.  Upon

15  remand the Appeals Council directed the ALJ to offer plaintiff the opportunity to

16  appear at another hearing and to take any further action needed to complete the

17  record.[3]  *Id.* at 772; *see id.* at 641.

18       Plaintiff, represented by counsel, appeared and testified again before ALJ

19

20  _____

21  [2]   A prior finding of non-disability creates a presumption of continuing non-

22  disability, but the presumption does not apply if there are changed circumstances.

23  *Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1996); *Chavez v. Bowen*, 844 F.2d

24  691, 693-94 (9th Cir. 1988).  Although the agency determined *Chavez* applied

25  (AR at 123-35), the ALJ concluded changed circumstances existed.  *Id.* at 26, 642.

26  Further, *Chavez* is inapplicable when the claimant was unrepresented in the prior

27  claim.  *Lester*, 81 F.3d at 827-28.

28  [3]   Plaintiff filed a third set of applications for benefits on July 21, 2011.  AR at

971-85.  The Appeals Council consolidated all of plaintiff's claims for

consideration by the ALJ.  *Id.* at 773.

Kopicki on August 6, 2013.[4]  *Id.* at 676-709.  A vocational expert also testified. *Id.* at 709-15.  On February 24, 2014, the ALJ again denied plaintiff's claims for benefits.  *Id.* at 641-61

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 26, 2008, the first day following the ALJ Simon's binding decision denying plaintiff benefits.  *Id.* at 644; *see id.* at 25-35.

At step two, the ALJ found plaintiff suffered from the following severe combination of impairments: fibromyalgia; degenerative disc disease of the lumbar spine; minimal scoliosis; obesity; a depressive disorder, not otherwise specified; a history of anxiety; and a history of recurrent kidney stones.  *Id.* at 644-45.  The ALJ additionally found plaintiff's irritable bowel syndrome, asthma, allergies, and history of headaches nonsevere, and plaintiff's medically determinable mental impairment nonsevere when considered independent of her physical impairments.  *Id.* at 645-50.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings").  *Id.* 650.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[5] and

---

[4]  The ALJ stated in his decision that plaintiff appeared at an October 11, 2012 hearing.  AR at 641.  No transcript from such a hearing is in the record and there is no indication in the record that the August 2013 hearing was of a supplemental nature.  *See id.* at 678.  Further, as an October 2012 hearing would have been before the Appeals Council remanded the case to the ALJ in December 2012 (*see id.* at 770), it appears unlikely there was such a hearing.

[5]  Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,

1    determined she had the RFC to perform light work, with the limitations that

2    plaintiff could: lift or carry twenty pounds occasionally, and ten pounds

3    frequently; stand or walk for six hours in an eight-hour workday; sit for six hours

4    in an eight-hour workday; and occasionally crouch, crawl, stoop, and balance. *Id.*

5    at 651.  The ALJ determined plaintiff could never climb ladders, ropes, or

6    scaffolds; should avoid operation of foot controls; and must avoid concentrated

7    exposure to temperature extremes and hazards, such as dangerous moving

8    machinery and unprotected heights. *Id.*  Plaintiff was further limited to

9    performance of simple work tasks. *Id.*

10        The ALJ found, at step four, that plaintiff was incapable of performing her

11   past relevant work. *Id.* at 659.

12        At step five, the ALJ found that there were jobs that existed in significant

13   numbers in the national economy that plaintiff could perform, including

14   housekeeping cleaner, cashier II, and fast food worker. *Id.* at 660.  Consequently,

15   the ALJ concluded that, for the relevant period, plaintiff did not suffer from a

16   disability as defined by the Social Security Act. *Id.* at 661.

17        Plaintiff filed a timely request for review of the ALJ's decision, which was

18   denied by the Appeals Council. *Id.* at 634-37.  The ALJ's decision stands as the

19   final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

22        This court is empowered to review decisions by the Commissioner to deny

23   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

24   Administration must be upheld if they are free of legal error and supported by

26   1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step

27   evaluation, the ALJ must proceed to an intermediate step in which the ALJ
     assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486

28   F.3d 1149, 1151 n.2 (9th Cir. 2007).

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ failed to make a proper credibility determination. P. Mem. at 4-15. Specifically, plaintiff contends the ALJ failed to provide any clear and convincing reasons for discounting plaintiff's credibility. The court disagrees.

An ALJ must make specific credibility findings, supported by the record.

1   Social Security Ruling ("SSR") 96-7p.[6]   To determine whether testimony

2   concerning symptoms is credible, the ALJ engages in a two-step analysis.

3   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).   First, the ALJ

4   must determine whether a claimant produced objective medical evidence of an

5   underlying impairment "'which could reasonably be expected to produce the pain

6   or other symptoms alleged.'"   *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

7   341, 344 (9th Cir. 1991) (en banc)).   Second, if there is no evidence of

8   malingering, an "ALJ can reject the claimant's testimony about the severity of her

9   symptoms only by offering specific, clear and convincing reasons for doing so."[7]

10   *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord*

11   *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

12       "[A]n ALJ does not provide specific, clear, and convincing reasons for

13   rejecting a claimant's testimony by simply reciting the medical evidence in

14   support of his or her residual functional capacity determination."   *Brown-Hunter v.*

15   *Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).   To permit a meaningful review of the

16   ALJ's credibility determination, the ALJ must "specify which testimony [he] finds

17   not credible, and then provide clear and convincing reasons, supported by

18   evidence in the record, to support that credibility determination."   *Id.*   The ALJ

19   _____

20       [6]   "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.   SSRs are binding on all

21   components of the SSA.   SSRs do not have the force of law.   However, because

22   they represent the Commissioner's interpretation of the agency's regulations, we
     give them some deference.   We will not defer to SSRs if they are inconsistent with

23   the statute or regulations."   *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th

24   Cir. 2001) (internal citations omitted).

25       [7]   Defendant suggests the ALJ was only required to provide specific reasons
     supported by substantial evidence, rather than clear and convincing reasons.   D.

26   Mem. at 1.   But the Ninth Circuit has explicitly rejected that argument.   *See*

27   *Burrell*, 775 F.3d at 1136-37.   Accordingly, this court applies the clear and
     convincing standard.

28

1   may consider several factors in weighing a claimant's credibility, including:

2   ordinary techniques of credibility evaluation such as a claimant's reputation for

3   lying; the failure to seek treatment or follow a prescribed course of treatment; and

4   a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

5   2008); *Bunnell*, 947 F.2d at 346-47.  The ALJ may additionally consider

6   "inconsistencies either in [claimant's] testimony or between h[er] testimony and

7   h[er] conduct" and "testimony from physicians and third parties concerning the

8   nature, severity, and effect of the symptoms of which [s]he complains." *Light v.*

9   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

10       Here, at the first step, the ALJ found the combination of plaintiff's

11   medically determinable impairments could reasonably be expected to cause some

12   of the symptoms alleged.  AR at 655.  At the second step, because he was reluctant

13   to make an express and separate finding of malingering, the ALJ was required to

14   provide clear and convincing reasons for finding plaintiff less credible. *See id.* at

15   655, 657.  Here, the ALJ discounted plaintiff's credibility because: (1) the record

16   lacks objective medical evidence to "support the degree of limitation [plaintiff]

17   describes"; (2) there is no "credible explanation for the inconsistencies between

18   [plaintiff's] 2009 and more recent testimony (and descriptions given to other

19   sources) concerning actives of daily living"; (3) plaintiff appears to embellish

20   when describing her symptoms – "clinicians [have] described [her] as exhibiting

21   exaggeration, poor motivation, vague complaints and poor effort on examination";

22   (4) the record shows "large, unexplained gaps in [plaintiff's] treatment history,"

23   and plaintiff "failed to follow-up with a mental health specialist"; and (5) plaintiff

24   "has a poor work record." *Id.* at 655-58.

25       As an initial matter, the ALJ specified those portions of plaintiff's testimony

26   that he found lacking in credibility:

27       In August 2013, [plaintiff] testified that she is unable to work due to

28

8

1
2
3
4
5

back pain, greater on the right, tailbone pain, pain in her whole body, sharp stinging pain in her legs and feet, shooting and tingling pain shooting down her arms and wrists, muscle aches, left-sided neck pain, poor sleep, kidney stones, nausea and vomiting, stomach and bowel problems, hypertension, anxiety and depression.

6   *Id.* at 654-55.

7   **A.   Lack of Objective Medical Evidence Was a Partially Clear and**
8   **Convincing Reason for Discounting Plaintiff's Credibility**

9   One of the reasons given by the ALJ for finding plaintiff less than credible
10   was the lack of objective medical evidence to support certain of her claimed
11   impairments.  AR at 656.  Generally an ALJ "may not reject a claimant's
12   subjective complaints based solely on a lack of objective medical evidence to fully
13   corroborate the alleged severity of pain," but lack of objective medical evidence
14   may be one factor used to evaluate credibility.  *Bunnell*, 947 F.2d at 345; *see*
15   *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (asserting a lack of
16   corroborative objective medical evidence may be one factor in evaluating
17   credibility).  Plaintiff's main complaints involve back and leg pain resulting from
18   degenerative disc disease and fibromyalgia, and anxiety, depression, and poor
19   sleep.

20   "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-
21   understood within much of the medical community."  *Benecke v. Barnhart*, 379
22   F.3d 587, 590 (9th Cir. 2004).  Lack of objective tests supporting the severity of
23   plaintiff's subjective complaints, alone, cannot justify discounting plaintiff's
24   credibility because the diagnosis for fibromyalgia is based entirely on subjective
25   "reports of pain and other symptoms . . . . [and] to date there are no laboratory tests
26   to confirm the diagnosis."  *Id.*  "There are no laboratory tests for the presence *or*
27   *severity* of fibromyalgia."  *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)

28

1 (emphasis added); *see Preston v. Secretary of Health and Human Servs.*, 854 F.2d

2 815, 818 (6th Cir. 1988) (noting that "physical examinations will usually yield

3 normal results – a full range of motion, no joint swelling, as well as normal muscle

4 strength and neurological reactions").

5      The ALJ here recognized that "lack of objective findings is not a clear and

6 convincing reason for rejecting the claimant's statements concerning the severity

7 of her fibromyalgia."  AR at 656.  As such, the ALJ took pains to specify that his

8 discussion of lack of objective medical evidence did not concern fibromyalgia,

9 which was not the only impairment plaintiff alleged.  Rather, he found a lack of

10 objective medical evidence to support plaintiff's claimed limitations due to a

11 "back condition emanating from scoliosis or bulging or herniated lumbar discs."

12 *Id.*; *see id.* at 69, 86, 646-48, 327-29, 336, 346-50, 376-78, 1172-76.

13      The ALJ noted, "[i]n contrast to fibromyalgia, which is defined by

14 classification of symptoms and for which there are no confirmatory diagnostic and

15 clinical tests, the nerve pain [plaintiff] describes should in a general sense have a

16 causative agent."  *Id.* at 656.  The ALJ recounts numerous tests that were

17 unsuccessful in isolating the cause of plaintiff's alleged severe back pain.  *Id.*; *see,*

18 *e.g., id.* at 356 (finding mild age-related disk changes but no nerve root

19 impingement); 445 (finding mild tenderness but "no evidence of true nerve root

20 damage"); 1161 ("5/5 muscle strength globally" with intact sensation and

21 reflexes).  The ALJ thus found no explanation in the record "from a back

22 perspective, for her nerve related leg and foot complaints . . . [n]or is an etiology

23 provided for her allegations of stinging arm pain."  *Id.* at 656.  The ALJ

24 considered plaintiff's complaints of "stinging arm and leg pain in the context of

25 fibromyalgia," and found such pain did meet the diagnostic criteria for

26 fibromyalgia – "widespread muscle pain with repeated manifestations of six or

27 more fibromyalgia symptoms, none of which describe the stinging pain [plaintiff]

28

1  alleges." *Id.* (citing SSR 12-2p, quoting the 2010 American College of

2  Rheumatology Preliminary Diagnostic Criteria).

3        Based on this analysis and the supporting evidence in the record, the lack of

4  objective medical evidence was a clear and convincing reason to discount

5  plaintiff's subjective testimony as to the symptoms of her degenerative disc

6  disease and scoliosis.  Nonetheless, plaintiff's primary allegations of pain and

7  limitations appeared to stem from her fibromyalgia, and lack of objective medical

8  evidence is not a valid reason to discount such complaints.

9  **B.**    **Inconsistent and Unsupported Testimony Was a Partially Clear and**

10         **Convincing Reason for Discounting Plaintiff's Credibility**

11        The ALJ found, "[i]n her most recent testimony [plaintiff] describes

12  significantly greater limitations in activities of daily living than she did in at the

13  2009 hearing." AR at 655.  The ALJ found this testimony not to be "fully credible

14  in this regard as the expanded medical records do not corroborate a worsening of

15  her fibromyalgia and other conditions, except possibly those records related to her

16  kidney stones." *Id.*  Inconsistent and unsupported testimony can weigh against a

17  plaintiff's credibility.  *See Light*, 119 F.3d at 792 (finding inconsistency in

18  testimony may be considered in determining credibility); *see also Bray v. Astrue*,

19  554 F.3d 1219, 1227 (9th Cir. 2009); *Batson v. Comm'r*, 359 F.3d 1190, 1196-97

20  (9th Cir. 2004).

21        In 2008, plaintiff testified before ALJ Simon that her pain started eight

22  years prior and "in the last year and a half it [had] gotten really, really bad." *Id.* at

23  56.  She testified should could only stand for a few minutes, walk short distances,

24  navigate stairs with a cane, and although she could "force [her]self to sit" for more

25  than ten minutes, after which her legs went numb, she continued to experience

26  pain while sitting. *Id.* at 57-58.  Plaintiff asserted she was not capable of any

27  exercise (*id.* at 60), and although she tries to assist with chores, her daughter "does

28

almost everything." *Id.* at 63.  She stated she occasionally left the apartment to help with laundry at the facility located in the complex, to shop with her daughter, and attend doctor's appointments, but participated in no social activities, and was "not real great with computers." *Id.* at 63-64.  She denied ever having a drivers license, but acknowledged she could take public transportation or get rides from friends. *Id.*

In 2009, plaintiff testified she was unable to work because her "pain is really severe.  It [is] painful to sit, even painful to lie down.  But sometimes, it's so severe that [she] can't even stand up at all and [she's] just so tired from the pain." *Id.* at 79.  She reported the pain is always present, "[b]ut it can be at different levels." *Id.* at 80.  Plaintiff testified that her best guess was she could walk about a half a block to her mailbox before the pain gets so bad that she "[doesn't] want to do anything else." *Id.* at 92.  She could stand for only five to ten minutes, could not put any weight on her right-side while sitting, and she felt constant pain while seated. *Id.*  She confirmed that she would not be able to stand or sit longer even with breaks. *Id.* at 93.  She said she washed the dishes, might sleep all day if her pain stopped her from sleeping the night before, helps with the laundry, and can shop if there's a list so she did stand for too long, watched a lot of broadcast television, and did not read because she could not concentrate. *Id.* at 87-89.  She no longer took public transportation, so she was completely dependent on her daughter to give her rides. *Id.* at 88.

In 2011, plaintiff completed an Adult Functional Report questionnaire. *Id.* at 1026.  She reported waking up, eating food cooked by her daughter, watching television, and sleeping throughout a normal day. *Id.*  She reported that attending to her own "personal care" was not a problem, but her daughter does all the other chores because it is too difficult for her to stand and she did not shave her legs often because it hurt to bend. *Id.* at 1027-28.  She reported going to the grocery

store but only with a set list of items to purchase, which helps limit the amount of time she spends standing. *Id.* at 1029, 1030.  She watched television, although she reported it often put her to sleep. *Id.* at 1030-31.  She socialized several times per year with her father, but she mostly just stayed home. *Id.*  In a 2011 disability appeal form, plaintiff reported her symptoms began to worsen in April 2011. *Id.* at 1079.  She stated, "[t]he main reason [she doesn't] do anything all day is because the pain get so bad and [she] will start to vomit." *Id.* at 1083.  She reported difficulty showering because it hurt to stand. *Id.* at 1082.

At the 2013 hearing, plaintiff reported having degenerative disc disease, fibromyalgia, and scoliosis. *Id.* at 685-86.  She testified she experienced pain throughout her body, especially in her tailbone and lower back, which was worse on her right side. *Id.* at 686.  She said her pain was exacerbated by standing, walking, and sitting. *Id.* at 686-87.  She reported her pain was so severe that she no longer did any household chores. *Id.* at 687.  She admitted her doctors suggest she swim to help ease her pain, but she had no access to an indoor pool with warm water and her medications made her susceptible to sunburn. *Id.* at 697-98.  On an average day, she mostly lay in bed watching television or sleeping. *Id.* at 701.  She reported not going to the market often and that her daughter did all the household chores. *Id.* at 702.  She reported difficulty showering and cleaning herself. *Id.*  She did not use public transportation because sitting was too difficult (*id.* at 703), and since she stopped working she really has no friends. *Id.* at 705.  She said she experienced very few good days, but even on those, she could not "go for walks or anything like that." *Id.*  She reported not leaving her apartment often – sometimes not for an entire week. Id. at 707.

The review of plaintiff's testimony reflects that, although plaintiff consistently reported being in severe pain, her reported daily activities decreased over the years.  The ALJ focused on the differences in her testimony between 2009

13

and 2013.  In 2009, plaintiff testified she could walk about a half a block to her mailbox, could stand for five to ten minutes, washed the dishes, helped with the laundry, and could shop for short periods of time.  By contrast, in 2013 plaintiff testified she no longer did any household chores, on an average day mostly lay in bed watching television or sleeping, did not go to the market often, had difficulty showering and cleaning herself, even on her good days could not go for walks, and sometimes would not leave her apartment for an entire week.  Although the difference in this testimony is not dramatic, the change between being able to do chores in 2009 and lying in bed all day most days in 2013 was significant.

The ALJ focused on the lack of evidence of this worsening condition.  To the extent the ALJ suggested the lack of objective medical evidence of a worsening of her fibromyalgia was a relevant factor, the ALJ's reasoning was invalid, for the reasons discussed above.  But the ALJ also notes that, given plaintiff's reports of doing virtually no activity, he would expect to see "evidence of diffuse atrophy of her upper and lower extremities due to lack of use," yet he found no such evidence in the records.  *Id.* at 655; *see id* at 646-47.  This is supported by evidence in the record.  *See id.* at 444, 473, 1365.

The ALJ also found plaintiff's testimony regarding the increasing severity of her pain and limitations to be inconsistent with the extent to which medical records note plaintiff complained of fibromyalgia pain, particularly in the "more recent" treatment records from Dr. Patel .  *Id.* at 658.  But this is not supported by the record, as Dr. Patel's notes from 2010 through 2012 contain numerous references to fibromyalgia.  *See id.* at 1100-04, 1106-08, 1113-19, 1121-24, 1126, 1128; *see also id.* at 1167 (assessing plaintiff with fibromyalgia in 2013 after examination at the Los Angeles County USC Medical Center and review of plaintiff's medical records).  There is of course no dispute that plaintiff suffers from fibromyalgia; the ALJ found it to be one of plaintiff's severe impairments.

1   *See id.* at 644.  It is the extent to which plaintiff's fibromyalgia limits her that is in

2   dispute, and in this regard, the record does not reflect a significant lack of

3   complaints by plaintiff about her fibromyalgia.

4          As such, the lack of medical evidence of muscle atrophy to support her

5   claimed inactivity was a clear and convincing reason to discount plaintiff's

6   credibility, but in other respects the ALJ failed to point to inconsistencies in

7   plaintiff's testimony that fairly undercut her credibility.

8   **C.    Allegations of Embellishing Her Fibromyalgia Pain Were Not a Clear**

9          **and Convincing Reason for Discounting Plaintiff's Credibility**

10          The ALJ did not find plaintiff to be a malingerer (AR at 657), but he noted

11   "clinicians described [plaintiff] as exhibiting exaggeration, poor motivation, vague

12   complaints, and poor effort."  *Id.* at 656.  In February 2007, Dr. Van Duong found

13   plaintiff's reported pain in her right flank "[v]ery questionable."  *Id.* at 310, 656.

14   In March 2007, Dr. Adelaide Willis noted plaintiff was "apparently applying for

15   disability," and in April 2007, she opined that plaintiff "may have secondary gain

16   in terms of trying to apply for disability."  *Id.* at 303, 305, 656.  In June 2008, Dr.

17   Kaleem Uddin reported her impression that plaintiff "[was] not giving a good

18   effort" and was "very vague" in describing her pain during her examination.  *Id.* at

19   356, 656.  She opined "there are two possibilities either she is making it up just to

20   get off work . . . or this is soft tissue in nature."  *Id.*

21          Generally, an ALJ may discount a plaintiff's subjective complaints when

22   there is evidence in the record of exaggeration or a lack of cooperation and effort.

23   *See Tonapetyan*, 242 F.3d at 1148 (discounting credibility due to, in part, a

24   showing of "poor effort" during testing); *Thomas v. Barnhart*, 278 F.3d 947, 959

25   (9th Cir. 2002) (finding "[e]ven more compelling is the ALJ's [determination],

26   supported by the record, that [claimant] failed to give maximum or consistent

27   effort during two physical capacity evaluations").  But, in the instant case, all of

28

1   the reports cited by the ALJ occurred prior to plaintiff being diagnosed with

2   fibromyalgia in July 2008.  After physicians became aware of her condition, they

3   found plaintiff to be at least of "average reliability" (AR at 442), reported she was

4   "a good and reliable historian"  (*id.* at 1358; *see id.* at 358, 443) and "cooperative"

5   (*id.* at 1360), and were able to "develop[] a good rapport with [her]." *Id.* at 364,

6   443.  Physicians often question the motives of a patient seeking disability,

7   especially when his or her subjective complaints cannot be substantiated.  But it is

8   understood that fibromyalgia pain cannot be observed in the usual way, utilizing

9   standard medical tests. *See Preston*, 854 F.2d at 818.

10         The change in perception by examining physicians as to plaintiff's

11   cooperation and effort after her diagnosis with fibromyalgia undermines the earlier

12   allegations of embellishing or poor effort, which therefore are not a clear and

13   convincing reason for finding plaintiff not credible.

14   **D.**   **Failure to Seek Treatment Was a Clear and Convincing Reason for**

15         **Discounting Plaintiff's Credibility**

16         The ALJ also found plaintiff's allegations of disabling symptoms to be

17   inconsistent with the "large, unexplained gaps in treatment" reflected in her

18   medical records.  AR at 657.  The ALJ pointed to the fact that there was no

19   evidence of treatment for any condition from January to June 2012, and that

20   plaintiff did not see Dr. Buhay, her treating rheumatologist, for over a year from

21   September 2008 to November 2009.  *Id.*; *see id.* at 548, 1102-03.  The ALJ

22   recognized the challenges plaintiff faced in getting treatment from county facilities

23   or through her poor insurance, but noted that since plaintiff would get treatment

24   for acute conditions like a kidney stone, "one would expect a greater degree of

25   treatment" if plaintiff's "symptoms are truly as severe as she alleges." *Id.* at 657;

26   *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (a claimant's

27   "'statements may be less credible if the level or frequency of treatment is

28

inconsistent with the level of complaints'") (quoting SSR 96-7p).

In addition, the ALJ noted plaintiff was referred to mental health treatment on several occasions, but failed to follow her physicians' treatment recommendations or otherwise pursue mental health care.  AR at 648-50, 657; *see id.* at 85, 700-01, 1128 (alleging persistent, overwhelming anxiety causes concentration problems, chest pains, and sleep dysfunction but failing to follow-up with physicians or seek treatment); *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility). Plaintiff admits she was often referred to psychological treatment, but claims she never went because her insurance did not cover such treatment.  *Id.* at 84-85 (claiming MediCal does not pay for psychiatric treatment for those over the age of 21);[8] *id.* at 94-96 (acknowledging her rheumatologist referred her to see a psychologist and that she had access to county facilities); *id.* at 699 ("almost every doctor I've ever seen, even the emergency room, has always asked me if I've been to see a therapist, if I need to see one, but [] I don't have coverage and I don't have any money to pay").

Plaintiff argues she should not be penalized for failing to pursue treatment she could not afford.  P. Mem. at 10; *see Regennitter v. Comm'r*, 166 F.3d 1294, 1296 (9th Cir. 1999) (citing *Smolen*, 80 F.3d at 1284) ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it."); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment.").  But here, plaintiff had affordable treatment options available,

---

[8]   Mental health services have been a part of MediCal since its inception in 1965. *See* MediCal Policy Institute, Medi-Cal Facts (April 2001), *available at* http://www.chcf.org/~/media/MEDIA%20LIBRARY%20Files/PDF/PDF%20M/P DF%20MediCalMentalHealth.pdf.

and simply chose not avail herself of subsidized, effective, and available remedies. *See, e.g.*, AR at 1168 (referring plaintiff in April 2013 to Department of Mental Health based on a six-out-of-six depression/anxiety score at Los Angeles County USC Medical Center and not providing any evidence of plaintiff's follow-up).

Plaintiff further argues she "may have failed to seek psychiatric treatment for her mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). But this is not a case where plaintiff failed to recognize her need for treatment. Rather, the ALJ was not persuaded by the reasons plaintiff gave for not following her doctors' recommendations. *See* AR at 648-50, 657, 785. The court "may not engage in second-guessing" the ALJ's well supported determinations. *Thomas*, 278 F.3d at 959; *see Molina*, 674 F.3d at 1113-14 (affirming credibility finding, in light of plaintiff's unpersuasive reasons for resisting treatment, where despite repeated efforts of treating physicians plaintiff failed to comply with recommended treatment).

Plaintiff's gaps in treatment and her repeated failure to follow her physicians' recommendations to seek mental health care constitute another clear and convincing reason for finding plaintiff less than fully credible.

**E.** **Plaintiff's Minimal Work History Before the Onset of Her Alleged Pain Was a Clear and Convincing Reason for Discounting Her Credibility**

The ALJ noted plaintiff had a poor work record. AR at 658. The ALJ found plaintiff worked for "only five years of her adult life," which "casts doubt on the current claims of inability to work." *Id.* An ALJ is required to consider a work history when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3). Evidence of a poor work history is a clear and convincing reason to discredit

18

1  plaintiff's credibility.  *Thomas*, 278 F.3d at 959 (upholding ALJ's negative

2  credibility determination because, among other factors, plaintiff's "work history

3  was spotty, at best" and she "has shown little propensity to work in her lifetime").

4       Plaintiff was thirty-seven years old on her alleged disability onset date.  AR

5  at 76, 806.  She testified in March 2008 that her symptoms began approximately

6  eight years earlier when she would have been about twenty-nine, but did not

7  become disabling until 2007.  *Id.* at 56.  Plaintiff completed high school in 1989

8  and acquired a certificate for medical assisting in 2000.  *Id.* at 53, 76, 1056.  Yet,

9  her only experience as a medical assistant was a temporary position that lasted

10  only a few months.  *See id.* at 55, 76.  Plaintiff has past relevant work as a retail

11  sales clerk and pharmacy clerk.  *Id.* at 98, 206, 1035-39, 1057.  But all of her work

12  was part-time.  *Id.* at 54-55.  In all the years prior to the ALJ's determination,

13  plaintiff had never worked a full-time job, and "there [were] many years she did

14  not work consistently while she was admittedly not disabled."  *Id.* at 658; *see id.* at

15  54-56. Plaintiff neither addresses this portion of the ALJ's decision nor offers any

16  argument to undermine this reasoning.  Plaintiff's unexplained poor work history

17  is a clear and convincing reason to discount her credibility.  *Thomas*, 278 F.3d at

18  959.

19       In sum, some of the reasons the ALJ gave for discounting plaintiff's

20  credibility were not clear and convincing or were only partially clear and

21  convincing.  But any errors were harmless because the ALJ provided multiple

22  reasons that were clear and convincing, including the lack of objective medical

23  support for plaintiff's alleged nerve-related back impairments, the lack of evidence

24  of atrophy to support her claimed inactivity and deteriorating condition, the gaps

25  in her treatment for fibromyalgia, her failure to seek prescribed mental health

26  treatment, and her poor work record prior to the onset of her alleged disability.

27  *See Batson*, 359 F.3d at 1195-97 (finding ALJ error harmless, because the

28

1 | remaining reasons and ultimate credibility determination were adequately
2 | supported by substantial evidence in the record).  Thus, the ALJ did not err in
3 | finding plaintiff less than fully credible.

4 | **V.**

5 | **CONCLUSION**

6 | IT IS THEREFORE ORDERED that Judgment shall be entered
7 | AFFIRMING the decision of the Commissioner denying benefits, and dismissing
8 | the complaint with prejudice.

11 | DATED: September 28, 2016

SHERI PYM
United States Magistrate Judge